UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL J. GEDEON,                      )
                          Plaintiff,    )
                                        )
            v.                          )          Civil Action No. 15-cv-30038-KAR
                                        )
NORTHERN CONSTRUCTION,                  )
SERVICES, LLC,                          )
                                        )
                          Defendant.    )

MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Dkt. No. 52)

ROBERTSON, U.S.M.J.

I.      Introduction

        *Pro se* plaintiff Michael J. Gedeon ("Plaintiff") was employed as a carpenter by

Defendant Northern Construction Service, LLC ("Defendant"), for one day before he was laid

off.  Plaintiff alleges in his amended complaint that Defendant discriminated against him and

terminated his employment on the basis of his race and in retaliation for his having filed claims

of discrimination against his union in the past.  Defendant denies that it discriminated against

Plaintiff or otherwise acted improperly and contends that Plaintiff was terminated because

Defendant had already hired another carpenter to fill the role on the project when the site

superintendent, acting outside of his authority, hired Plaintiff.

        The matter is before the court on "Defendant, Northern Construction, LLC's Motion for

Summary Judgment" (Dkt. No. 52).  By its motion, Defendant contends that there are no

disputed issues of fact and that it is entitled to judgment as a matter of law with respect to

Plaintiff's claims of unlawful discrimination.  Plaintiff has not filed an opposition, and the time

for him to do so has elapsed.  The parties have consented to this court's jurisdiction (Dkt. No.

21).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  For the reasons detailed below, this court finds

that Plaintiff has failed to present sufficient facts to create a trial-worthy issue, and, therefore,

Defendant's motion for summary judgment is ALLOWED.

II.    Statement of Facts[1]

Defendant is a Massachusetts-based general contractor specializing in bridge

construction, site work, marine construction, concrete work, and utilities (DF ¶ 1).  Most of

Defendant's construction services are for publicly funded projects for federal, state, and

municipal agencies (DF ¶ 2).  Defendant was and is a party to a collective bargaining agreement

("the CBA") with the New England Regional Council of Carpenters – United Brotherhood of

Carpenters and Joiners of America – Local 108 ("the Union") (DF ¶¶ 4-5).  Pursuant to the CBA,

after being awarded a project, Defendant contacts the Union regarding its carpentry needs, and,

through the Union, it hires members to fill the available positions (DF ¶ 12).  General

Superintendent John Rahkonen and Senior Project Manager & Operations Coordinator Shawn

Clark are in charge of the hiring and firing of all employees for Defendant (DF ¶¶ 10-11).  Both

Rahkonen and Clark are part of Northern Operations, the entity with responsibility for

monitoring Defendant's worksite needs (DF ¶ 15).

During the late winter and early spring of 2009, Clark met several times with Mike

Twining, a Caucasian carpenter and Union member, in Defendant's Palmer, Massachusetts

office, to discuss work opportunities (DF ¶ 46).  During these meetings, the two discussed

Twining's carpentry techniques and past employment experience (DF ¶ 47).  In the spring of

---

[1] The undisputed material facts are derived from "Defendant, Northern Construction, LLC's Statement of Material Facts" (Dkt. No. 54) and supporting affidavits, depositions, and other documentation, and are cited herein as "DF ¶ _".

2009, the Massachusetts Highway Department ("MassHighway") awarded Defendant a construction contract for the rehabilitation of the Liberty and Armory Street bridges over Interstate 291 in Springfield, Massachusetts ("Liberty/Armory Project" or "the Project") (DF ¶ 20). Clark concluded that Twining would be a good fit for the Project (DF ¶ 48).

Around the time Defendant was awarded the Project, Plaintiff, an African-American carpenter and Union member, went to Defendant's Palmer office to talk to Rahkonen about work opportunities, including on the Project (DF ¶¶ 17-19, 23). Rahkonen advised Plaintiff that Defendant "had nothing right now," but told him to "come back" at a later date and referred him to other construction companies for possible job openings (DF ¶¶ 26-27, 29). Sometime later, Plaintiff saw a trailer belonging to Defendant at the Liberty/Armory Project job site, and Plaintiff approached Defendant's job superintendent, Robert Nelson, to speak about work on the job (DF ¶¶ 21, 31). Nelson lacked the authority to hire employees, but, believing that hiring Plaintiff would help Defendant fulfill certain diversity goals with MassHighway, Nelson told Plaintiff, "I can use you," and he took Plaintiff's phone number (DF ¶ 10-11, 32-33, 55). Sometime later, Plaintiff returned to Defendant's office to speak with Rahkonen about work once again (DF ¶ 34). This time the two spoke for two-to-three minutes in the hallway, and Rahkonen told Plaintiff that he was not going to hire him (DF ¶¶ 36-37). Plaintiff did not tell Rahkonen about his meeting or communications with Nelson (DF ¶ 35).

In early June 2009, Nelson contacted Clark and advised him that he would need additional carpenters for the Liberty/Armory Project (DF ¶ 50). Clark made arrangements for Twining to be the next carpenter hired out of the Union and for him to begin work on the Project on June 19, 2009 (DF ¶ 50). Nelson was unaware that Clark had hired Twining, and, on June 16, 2009, Nelson called Plaintiff and told him to report to the Liberty/Armory Project job site for

work the following day (DF ¶¶ 38, 49).  Neither Clark nor Rahkonen were aware Nelson was hiring Plaintiff (DF ¶¶ 49, 52-53).  Plaintiff reported to the job site as instructed by Nelson on June 17, 2009, filled out the requisite employment paperwork, and worked a full day (DF ¶ 43, 51).  The following morning, Rahkonen was on the job site and recognized Plaintiff (DF ¶ 52).  Upon speaking with Nelson, Rahkonen learned that Nelson had hired Plaintiff without his or Clark's approval and without going through Northern Operations or the Union (DF ¶ 53).  At Rahkonen's direction, Nelson called Plaintiff into his office and laid him off (DF ¶ 54).

At the time of Plaintiff's termination, Defendant employed 92 African-American workers, of whom 54 were carpenters (DF ¶ 9).  On the Liberty/Armory Project as a whole, 14.36% of employment work hours were completed by minority employees, well exceeding the 5.00% goal for the Project (DF ¶ 9).  The position for which Nelson hired Plaintiff was form carpenter, a role that entailed constructing concrete forms, temporary wood supports, and temporary form work that would span over the Interstate (DF ¶¶ 39-40).  Nelson hired Plaintiff without obtaining information about Plaintiff's qualifications and experience relating to this specialized form of carpentry (DF ¶ 41).  Defendant's lead carpenter, Scott Pascale, expressed concerns about Plaintiff's qualifications and skill level (DF ¶ 57).

In 1995, 2003, and 2009, Plaintiff filed claims against the Union in the Massachusetts Commission Against Discrimination ("MCAD") (DF ¶ 58).  There is no evidence in the summary judgment record that Defendant knew of Plaintiff's claims at the time he was fired (DF ¶ 60).  Plaintiff's testimony in his deposition establishes that he "assume[d]" that his Union business agent, Jason Garand, contacted Defendant and instructed that Plaintiff be fired because of his earlier complaints of discrimination against the Union, and that his "inclination [is] to know that it happens" (DF ¶ 61).

III.   D̲ISCUSSION̲

A.   Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In the summary judgment context, "[a] factual dispute is 'genuine' if 'it may reasonably be resolved in favor of either party' and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'"  *DePoutot v. Raffaelly*, 424 F.3d 112, 117 (1st Cir. 2005) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990) (citations and internal quotation marks omitted)).  "[A] fact is 'material' 'if its existence or nonexistence has the potential to change the outcome of the suit.'"  *Jarvis v. Village Gun Shop, Inc.*, 805 F.3d 1, 7 (1st Cir. 2015) (citing *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 4 (1st Cir. 2010)).

A party seeking summary judgment is responsible for identifying those portions of the record, "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'"  *Rakes v. United States*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005) (quoting *Celotex*, 477 U.S. at 325).  If the moving party meets its burden, "[t]he non-moving party bears the burden of placing at least one material fact into dispute."  *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  In ruling on summary judgment, the court "view[s] 'the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's

favor.'" *Padilla-García v. Guillermo Rodríguez*, 212 F.3d 69, 73 (1st Cir. 2000) (quoting

*Euromotion, Inc. v. BMW of N. Am., Inc.*, 136 F.3d 866, 869 (1st Cir. 1998)).

Although Defendant's motion is unopposed, the court still must determine, on the record

before it, whether Defendant is entitled to summary judgment.  *See Cordi–Allen v. Halloran,* 470

F.3d 25, 28 (1st Cir. 2006) (citing Fed. R. Civ. P. 56(e) (instructing that if the adverse party fails

to respond, "summary judgment, if appropriate, shall be entered"); *Stonkus v City of Brockton*

*Sch. Dep't*, 322 F.3d 97, 102 (1st Cir. 2003)).   "[E]ven an unopposed motion for summary

judgment should not be granted unless the record discloses that there is no genuine issue as to

any material fact and that the movant is entitled to judgment as a matter of law.'" *Rivera–Torres*

*v. Rey–Hernández,* 502 F.3d 7, 13 (1st Cir. 2007) (citing *Vélez v. Awning Windows, Inc.*, 375

F.3d 35, 42 (1st Cir. 2004); *Mendez v. Banco Popular de P.R.*, 900 F.2d 4, 7-8 (1st Cir. 1990)).

"In most cases, however, 'a party's failure to oppose summary judgment is fatal to its case.'"

*Ferreira v. Mortg. Elec. Registration Sys., Inc.*, 794 F. Supp. 2d 297, 301 (D. Mass. 2011)

(quoting *Pérez–Cordero v. Wal–Mart P.R.,* 440 F.3d 531, 533–34 (1st Cir. 2006)).

B. Legal Principles

Under the *McDonnell Douglas* burden-shifting framework, a plaintiff claiming

employment discrimination must first establish a prima facie case of discrimination.  *See Ahmed*

*v. Johnson*, 752 F.3d 490, 495-96 (1st Cir. 2014) (citing *Johnson v. Univ. of P.R.*, 714 F.3d 48,

53 (1st Cir. 2013)).   "If [the plaintiff] succeeds, an inference of discrimination arises, and the

burden of production shifts to the defendant to produce evidence that the challenged employment

action was taken for a legitimate, non-discriminatory reason." *Id*. at 496 (citing *Johnson*, 714

F.3d at 53-54).   Finally, if the defendant supplies such evidence, the plaintiff has the burden to

prove "'by a preponderance of the evidence that the employer's proffered reason is pretextual

and that the actual reason for the adverse employment action is discriminatory.'" *Id*. (quoting

*Johnson*, 714 F.3d at 54).

> Because the plaintiff bears the burden of persuasion in Title VII
> actions, a defendant is entitled to summary judgment if it can
> demonstrate that the plaintiff could not carry the burden of proof at
> trial.  The defendant may demonstrate this in two ways:  it may
> show that the plaintiff is unable to establish a prima facie case of
> discrimination; or, if the plaintiff has successfully established a
> prima facie case, the defendant may win summary judgment by
> showing that the plaintiff could not produce sufficient evidence of
> pretext to rebut an assertion of nondiscriminatory reasons for the
> discharge.  Summary judgement is inappropriate, however, if the
> plaintiff establishes a prima facie case and counters the defendant's
> proffered explanation with evidence raising a factual issue
> regarding the employer's true motivation for discharge.

*Jalil v. Avdel Corp.*, 873 F.2d 701, 707 (3d Cir. 1989).  *See also Ahmed*, 752 F.3d at 498 ("'All a

plaintiff has to do is raise a genuine issue of fact as to whether discrimination motivated the

adverse employment action.'" (quoting *Domínguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424,

433 (1st Cir. 2000))); *Ianetta v. Putnam Invs., Inc.*, 183 F. Supp. 2d 415, 420 (D. Mass. 2002)

(citing *Jalil*).  At the summary judgment stage, the court "must decide 'whether, viewing the

aggregate package of proof offered by [the plaintiff] and taking all inferences in [the plaintiff's]

favor, [the plaintiff] has raised a genuine issue of fact as to whether the termination was

motivated by [race] discrimination.'"  *Id*. (quoting *Domínguez-Cruz*, 202 F.3d at 431.

A prima facie case of employment discrimination requires proof that (1) the plaintiff is a

member of a protected class, (2) the plaintiff was qualified for the position held, (3) the plaintiff

was subjected to an adverse employment action, and (4) the position remained open or was filled

by someone with similar qualifications.  *Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 33 (1st

Cir. 2001) (quoting *Rodriguez-Cuervos v. Wal-Mart Stores, Inc.*, 181 F.3d 15, 19 (1st Cir.

1999)).  Defendant, for purposes of its motion for summary judgment, concedes that Plaintiff can

establish a prima facie case of race discrimination (Dkt. No. 53 at 13).  Thus, an inference of discrimination arises, and the burden shifts to Defendant to produce enough admissible evidence to support its articulated legitimate, non-discriminatory reason for the adverse action.  *Ahmed*, 752 F.3d at 496 (citing *Johnson*, 714 F.3d at 53).

Defendant's articulated legitimate, non-discriminatory reason for firing Plaintiff is that Nelson acted outside of his authority when he hired Plaintiff to fill the form carpenter role, and Clark had already hired Twining to fill the position.  Defendant supports its reason with competent evidence, and, because Plaintiff has not submitted a statement of material facts of record controverting Defendant's facts, Defendant's facts are deemed admitted.  *See* LR, D. Mass. 56.1.  *See also Cordi-Allen*, 470 F.3d at 28 (citing LR, D. Mass. 56.1 as support for reviewing the district court's grant of summary judgment on the facts as set forth in the defendant's unopposed motion for summary judgment).  The undisputed facts show that only Clark and Rahkonen were authorized to hire employees.  Nelson did not have such authority. When Clark and Rahkonen exercised their hiring authority, they acted through Northern Operations and by contacting the Union to place union members in available positions.  Nelson hired Plaintiff without going through Northern Operations or the Union.  Clark met with Twining several times and discussed his carpentry techniques and experience before concluding that Twining would be a good fit for the Liberty/Armory Project.  Plaintiff did not undergo this process to vet the sufficiency of his training and experience for the demands of the position.[2] When Nelson contacted Clark in early June about the need for another carpenter on the Project, Clark made arrangements through the Union for Twining to be the next carpenter hired, and he instructed Twining to report to the Project site on June 19, 2009.  Neither Clark nor Rahkonen

---

[2] Indeed, there is uncontroverted evidence that Defendant's lead carpenter had concerns that Plaintiff's skills were inadequate for the particular job.

were aware when Nelson later told Plaintiff to report to the Project site on June 17, 2009.  When

Rahkonen saw Plaintiff on the site on June 18, 2009, he learned, for the first time, that Nelson

had hired Plaintiff without authorization and after he had already determined and advised

Plaintiff that Plaintiff would not be hired for the Project.  Rahkonen promptly instructed Nelson

to lay Plaintiff off.

The record evidence also shows that Defendant hires minorities, including African-

American workers.  During the week of Plaintiff's employ with Defendant, Defendant employed

92 African-American workers, of whom 54 were carpenters.  Further, on the Project as a whole,

14.36% of the employment work hours were completed by minority employees, well exceeding

the 5.00% goal for the Project.  Based on this uncontroverted evidence, the court concludes that

Defendant has met its burden of production.

Thus, in order for Plaintiff's claim of race discrimination to survive summary judgement,

Plaintiff must counter Defendant's proffered explanation with evidence raising a factual issue

regarding Defendant's true motivation in firing him.  *Jalil*, 873 F.2d at 707.  Defendant has not

submitted any evidence, however, and viewing the evidence before the court in the light most

favorable to Plaintiff and drawing all reasonable inferences in Plaintiff's favor as the court must,

there is an absence of evidence to rebut Defendant's reason for terminating Plaintiff.  Thus,

Defendant is entitled to summary judgment on Plaintiff's claim of race discrimination.

"To establish a prima facie case of retaliation, [a plaintiff] must prove by a

preponderance of the evidence that '(1) [s]he engaged in protected conduct under Title VII; (2)

[s]he suffered an adverse employment action; and (3) the adverse action is causally connected to

the protected activity."  *Dressler v. Daniel*, 315 F.3d 75, 78 (1st Cir. 2003) (alterations in

original) (quoting *White v. N.H. Dep't of Corr.,* 221 F.3d 254, 262 (1st Cir. 2000)).  "An

employee has engaged in an activity protected by Title VII if she has either opposed any practice made unlawful by Title VII, 'or made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *Torres-Negrón v. Merck & Co., Inc.*, 488 F.3d 34, 44 (1st Cir. 2007) (alterations in original) (quoting 42 U.S.C. § 2000e-3(a)). Because race discrimination is prohibited by Title VII, Plaintiff's MCAD filings are protected activity. *Ianetta*, 183 F. Supp. 2d at 424.  Defendant does not dispute that Plaintiff suffered an adverse employment action when he was terminated (Dkt. No. 53 at 15).  Thus, the only element remaining for Plaintiff to establish a prima facie case of retaliation is a causal connection between the two.

"In order to adequately establish the necessary causation as part of his prima facie burden, plaintiff must present evidence that the person responsible for the decision at issue either was aware of the protected conduct or 'consulted with anyone possessing a motive to retaliate against [plaintiff] ... [to] support[ ] an inference of complicity.'" *Bibiloni Del Valle v. P.R.*, 661 F. Supp. 2d 155, 171 (D.P.R. 2009) (alterations in original) (quoting *Dennis v. Osram Sylvania, Inc.*, 549 F.3d 851, 858 (1st Cir. 2008)).  For purposes of summary judgment, the court is required to draw every reasonable inference in favor of Plaintiff as the nonmoving party. "However, at this stage [the court] need not credit inferences that 'rely on tenuous insinuation.'" *Id*. (quoting *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 743 (1st Cir. 1995)).

There are no facts in the record indicating that Rahkonen (or Clark or Nelson) were aware of Plaintiff's MCAD complaints or consulted with Jason Garand about the MCAD complaints or terminating Plaintiff.  The alleged connection between Plaintiff's MCAD complaints and his termination are pure speculation and do not suffice to establish Plaintiff's prima facie case at the summary judgment stage. *See Dennis*, 549 F.3d at 858.  Moreover, even

assuming Plaintiff could establish a prima facie case in the retaliation context, his claim still fails because he has not shown that his termination was pretextual by countering Defendant's legitimate non-discriminatory reasons for terminating him.  *Id*.

IV.   <u>C</u>ONCLUSION

Based on the foregoing, Defendant's motion for summary judgment (Dkt. No. 52) is GRANTED.  Judgment shall be entered accordingly.

Dated: November 18, 2016                    <u>/s/ Katherine A. Robertson</u>
                                            KATHERINE A. ROBERTSON
                                            UNITED STATES MAGISTRATE JUDGE